UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09-cv-416-RJC
(3:06-cr-87-RJC)

| | |
|---|---|
| LARRY DUNLAP FRAZIER, ) | |
| ) | |
| Petitioner, ) | |
| ) | **ORDER** |
| v. ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** comes before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response, (Doc. No. 17), and on Petitioner's Reply to the Government's Response, (Doc. No. 20).[1]

**I.    BACKGROUND**

In early March 2006, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives arrested Petitioner in possession of a half kilogram of cocaine that he attempted to sell. (3:06-cr-87, Doc. No. 192: Presentence Report (PSR) at 7; 3:06-cr-87, Doc. No. 138: Sent. Hr'g Tr. at 25-26). Agents subsequently seized nearly $75,000 in cash from two residences where Petitioner regularly stayed, and evidence supported Petitioner's responsibility for more than 260 grams of crack and 530 grams of powder cocaine. (Id., Doc. No. 192: PSR at 7-8).

---

[1] Petitioner filed to motions to amend his § 2255 petition, citing additional case law and facts, but not altering the gravamen of the claim raised in the initial petition. (Doc. Nos. 6, 7).

Petitioner was indicted by the Grand Jury for the Western District of North Carolina on April 26, 2006, and charged with conspiracy to possess with intent to distribute powder and crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and possession with intent to distribute powder cocaine, in violation of 21 U.S.C. § 841(a)(1). (Id., Doc. No. 1). Public defender Kevin Tate was appointed on May 3, 2006. Three months later Petitioner retained Lyle Yurko, who filed a Notice of Attorney Appearance on August 4, 2006. (Id., Doc. No. 52).

Together, Yurko and Petitioner ultimately decided that it would be in Petitioner's best interest to plead guilty, with Yurko discussing the proposed plea agreement with Petitioner "thoroughly." (Id., Doc. No. 138: Sent. Hr'g Tr. at 4-5). Yurko told Petitioner that if he were determined to be a career defender, which was in "some doubt" at the time, Petitioner's sentence would be higher than if he were not. (Id.). Discussing the drug-quantity issue at length with Government counsel, Yurko negotiated the Government's concession that Petitioner would be responsible for 3.5 kilograms of powder cocaine and no quantity of crack cocaine, because Government counsel was not certain that the Government could convince a jury that Petitioner knew the powder cocaine he planned to sell would be converted into crack. (Id. at 6). Yurko also explained the drug-quantity stipulation to Petitioner. (Id., Doc. No. 58: Plea Agreement at 2, 8).

Petitioner filed a plea agreement on August 7, 2006, admitting guilt to Count One of the indictment. (Id.). The Court accepted the plea agreement in a Rule 11 proceeding on August 16, 2006. (Id., Doc. No. 63: Acceptance and Entry of Guilty Plea). During the Rule 11 hearing Petitioner indicated that he was satisfied with Yurko's performance. (Id. at 4). Specifically, at that hearing, after the terms of the parties' agreement were reviewed and Petitioner affirmed that

he understood its terms, Petitioner stated, with respect to Yurko, "I appreciate his services." (Id.).

On April 6, 2007, Petitioner filed a pro se Motion to Appoint Substitute Counsel for his bond hearing. (Id., Doc. No. 71). In this and other filings by Petitioner requesting the appointment of a replacement attorney, Petitioner alleged that Yurko lacked interest and devotion to the case, that a racist statement by Yurko had irreparably damaged their relationship, and that Yurko coerced him into signing the plea agreement by false promises of a seven-year sentence. (Id.). The Court denied Petitioner's motion on May 9, 2007. (Id., Doc. No. 76: Order). Petitioner filed a pro se Motion for Reconsideration on May 17, 2007. (Id., Doc. No. 79). The Court denied this motion on May 23, 2007. (Id., Doc. No. 81: Order). Petitioner filed a pro se Response in Opposition to Court's Order Denying Motion for Reconsideration on June 28, 2007, and a further pro se Memorandum in Support of Pending Motions on November 5, 2007. (Id., Doc. Nos. 89, 124).

Petitioner's sentencing hearing was held on November 27, 2007. (Id., Doc. No. 138: Sent. H'rg Tr.). The Court began the hearing by assuring Petitioner that the Court would consider any objections that he wished to make about the Presentence Report (PSR) and summarizing Petitioner's complaints about Yurko's representations. (Id. at 3-4, 8). The Court noted that some of the assertions Petitioner had made to the Court in various letters were "inconsistent with the things [he was] told and indicated to the magistrate judge that [he] understood at the Rule 11 hearing." (Id. at 6-7). The Court specifically questioned Yurko about the alleged lack of communication, his racist statement, and the allegations of impropriety. In response to Petitioner's assertion that Yurko had effectively abandoned his representation of Petitioner after Yurko's fee had been paid, Yurko explained to the Court that he had tried to visit

3

Petitioner but that Petitioner refused to see him. (Id. at 11). Yurko explained further that he had written Petitioner a letter explaining the sentencing strategy that he thought was best and that he had "done everything that [he knew] how to do to represent [Petitioner]." (Id.).

In response to the racist comment Petitioner cited as having created an irreconcilable conflict, Yurko explained to the Court that he and a probation officer were discussing in Petitioner's presence an African-American lawyer both men admired, that the statement had nothing to do with Petitioner, and that Petitioner had laughed about it at the time. (Id. at 12). After this explanation, the Court noted that Yurko was an able and experienced attorney but that it appeared that Petitioner sought to dismiss Yurko and to represent himself. (Id.). The Court explained that Yurko could argue initially on Petitioner's behalf but that Petitioner would have the opportunity to address the Court with any arguments or concerns Yurko had not articulated, "the best of both worlds." (Id.).

When Petitioner noted that he had "never asked to represent [himself]," but only wanted a new lawyer, the Court denied his request, stating that the Court would not appoint new counsel for Petitioner and that Petitioner's choices were to represent himself or to permit Yurko to represent him. (Id. at 13). After Yurko noted that he had not heard Petitioner ask to represent himself and after Petitioner stated that he was "not qualified" to represent himself, the Court stated that he was "going to let Mr. Yurko stay in the case for the purposes of the sentencing hearing." (Id. at 14-15; 17). Petitioner then asserted that he did not want Yurko to represent him and asked whether the Court was going to require that Yurko represent Petitioner anyway, after which the Court said, "[v]ery well," and instructed Yurko to sit behind Petitioner and to answer any questions posed by Petitioner. (Id. at 17).

4

The Court then addressed the more than 20 objections lodged by Petitioner and his counsel to the PSR, beginning by agreeing to the 3.5-kilogram drug quantity to which the parties stipulated in the plea agreement, even though this drug quantity was lower than that recommended in the PSR. (Id. at 18-19). This ruling resulted in a three-level reduction in the total offense level calculated by the probation officer and an applicable Sentencing Guidelines range of 188 to 235 months in prison. (Id. at 19). The Court then heard testimony from Special Agent Rodney Blacknall, the investigating agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, who testified to the circumstances of Petitioner's offense, including the seizure of more than 500 grams of powder cocaine from Petitioner. (Id. at 23-26).

At the conclusion of this testimony, the Court found Petitioner's guilty plea to be supported by a factual basis, including the drug quantity determination. (Id. at 29). Next, the Court addressed Petitioner's objection to his classification as a career offender based on prior convictions that were obtained in 1974, with the Court stating that it had reviewed these convictions and found that they supported Petitioner's classification as a career offender. (Id. at 31). The Court then asked Petitioner whether he had any further objections, at which time Yurko stated that he would seek a downward departure under Sentencing Guidelines § 4A1.3 based on the age of Petitioner's prior convictions. (Id. at 32-33). Petitioner also argued that the age of his convictions warranted a sentence below the bottom of the Guideline range, in response to which Government counsel noted that, while Petitioner's prior convictions were old, he had committed the drug-trafficking offense less than two years after his release from prison for those offenses. See (Id. at 34-39).

After hearing these arguments, the Court sentenced Petitioner to 188 months in prison, at the bottom of the applicable Guideline range, explaining that Petitioner's age and the age of his

5

prior convictions were appropriate factors, but that his relatively quick return to criminal activity was also a factor to be considered in determining an appropriate sentence. (Id. at 40). The Court then explained its application of the sentencing factors set forth in 18 U.S.C. § 3553(a) and concluded that the 188-month sentence was adequate, but not greater than necessary, to accomplish the purposes of sentencing. (Id. at 40-42). Judgment was entered on December 7, 2007. (Id., Doc. No. 131).

Petitioner appealed, arguing that the Court abused its discretion in failing to conduct an adequate inquiry into Petitioner's repeated requests for new counsel and in denying his motions for new counsel. The Fourth Circuit disagreed, affirming the Court's judgment and holding that this Court "did not abuse its discretion in denying [Petitioner's] motions seeking retained counsel's withdrawal and appointment of new counsel" and that this Court "conducted a thorough inquiry in arriving at this decision to deny the motion for substitution." United States v. Frazier, 313 F. App'x 587, 588 (4th Cir. 2008). With respect to Petitioner's argument that his conflict with counsel was so great that the resulting lack of communication prevented an adequate defense, the Fourth Circuit held that the record did not "reflect that the conflict between [Petitioner] and counsel resulted in a 'total lack of communication.'" Id. at 588-89.

Petitioner filed his Motion to Vacate in this Court on September 23, 2009. (3:09-cv-416, Doc. No. 1). In his Motion to Vacate, Petitioner claims as his sole ground for relief that Petitioner was denied his Sixth Amendment right to counsel in filing pretrial objections and at sentencing.

6

## II. DISCUSSION

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. In its Response to Petitioner's Motion to Vacate, the Government argues that it is entitled to judgment as a matter of law as to Petitioner's claim that he was denied his Sixth Amendment right to counsel in filing pretrial objections and at sentencing because Petitioner's claim of Sixth Amendment error is not cognizable on collateral review. The Court agrees.

Issues that were raised and decided on direct appeal may not be raised again on collateral review. United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004). Here, Petitioner raised on appeal his claim that he was effectively denied counsel during his sentencing proceeding. The Fourth Circuit rejected the claim, holding that this Court acted within its discretion in denying Petitioner's motions for substitution of counsel. While Petitioner did not argue on direct appeal that this Court failed to obtain a knowing waiver of his right to counsel in permitting Petitioner to represent himself pro se during a portion of the sentencing proceeding, Yurko represented Petitioner throughout the presentencing process, reviewing Petitioner's objections to the PSR, and affirming that those objections encompassed all legitimate objections. Furthermore, Yurko requested a downward departure on Petitioner's behalf, even after this Court granted Petitioner's request to represent himself. Thus, at least as to the presentence process, the Fourth Circuit's decision affirming the denial of Petitioner's motion for substitution of counsel amounts to a holding that Petitioner was not denied counsel in violation of the Sixth Amendment.

Next, to the extent that Petitioner did not assert various arguments in support of his Sixth Amendment claim on direct appeal, those portions of his Sixth Amendment claim are procedurally defaulted, and Petitioner has not established cause and prejudice to excuse the default. As a general rule, a claim of error that was not raised on direct appeal is procedurally defaulted and is not cognizable on collateral review because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations and citations omitted). Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim is cognizable in habeas "only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'" Id. at 622 (citations omitted).

In order to show "cause" for a procedural default, the defendant must demonstrate that some objective factor external to the record impeded his counsel's efforts to bring a claim on direct appeal. Murray v. Carrier, 477 U.S. 478, 497 (1986); Turner v. Jabe, 58 F.3d 924, 927 (4th Cir. 1995). It is not enough that counsel failed to present an argument that was unlikely to succeed; rather, cause only exists based on counsel's failure to present the claim if the claim "'is so novel that its legal basis is not reasonably available to counsel.'" Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)).

In order to establish "actual prejudice," the defendant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphases in original). In attempting to avoid a procedural default based on the "actual innocence" exception to the default, a defendant must show, by clear and convincing evidence, United States v. Mikalajunas, 186 F.3d 490, 494 (4th

8

Cir. 1999), that it is more likely than not that no reasonable juror would have convicted him because of his "factual innocence, not mere legal insufficiency," Bousley, 523 U.S. at 623.

To the extent Petitioner argues that he was denied counsel during the pretrial proceedings and during the portion of his sentencing hearing when Petitioner represented himself, with Yurko as back-up counsel, Petitioner's claim is procedurally defaulted because he did not present this argument on direct appeal, and he has not argued or established either cause for having failed to do so, or prejudice. As a review of the record establishes, Petitioner received the benefit of Yurko's representation at all stages, even after Yurko was acting only as back-up counsel. Furthermore, this Court ruled in Petitioner's favor on the drug-quantity objection, reducing Petitioner's sentence exposure by three offense levels. There simply is no evidence that Petitioner suffered any negative consequences from this Court's handling of his requests for new counsel.

Finally, even if a portion of Petitioner's Sixth Amendment claim were not procedurally defaulted, it has no merit. The Supreme Court and the Fourth Circuit have made clear that a defendant who seeks to represent himself must be given the choice to decide to do so, and the defendant's right to represent himself "is mutually exclusive of the right to counsel guaranteed by the Sixth Amendment." United States v. Bush, 404 F.3d 263, 270 (4th Cir. 2005); see also Faretta v. Calif., 422 U.S. 806, 834 (1975).

For a defendant to knowingly and intelligently waive his right to counsel, a defendant "should be made aware of the dangers and disadvantages of self-representation." Faretta, 422 U.S. at 835. Here, Petitioner unequivocally informed the Court that he did not wish for Yurko to represent him during the sentencing proceeding, notwithstanding the Court's explanation that Yurko was a qualified and experienced attorney, Petitioner's own acknowledgment of the same,

and the Court's strong recommendation that Petitioner continue to permit Yurko to represent him, because he would still be able to present his own arguments in favor of sentencing. See (Doc. No. 138 at 15). Petitioner still declined Yurko's help, insisting that he did not want Yurko to represent him. Under these circumstances, Petitioner's waiver of his right to counsel, for that limited period of time, was knowing and intelligent, and Petitioner was not denied his right to counsel.

### III. CONCLUSION

For the reasons stated herein, the Court will dismiss the Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

Signed: September 30, 2012

Robert J. Conrad, Jr.
Chief United States District Judge